### In re NATIONAL MARBLE & GRANITE CO.

(District Court, N. D. Georgia. April 29, 1913.)

No. 3,097.

BANKRUPTCY (§ 348*)—DEBTS ENTITLED TO PRIORITY—WAGES DUE "TRAVELING SALESMAN"—"WAGES."

Claimant, who was a traveling salesman for another concern, had an agreement with the bankrupt, which was a manufacturer of monuments, that he should receive 15 per cent. on the price of monuments sold by him as a commission, to be paid when the monument was set up and paid for. He contracted for the sale of a monument some 10 months before the bankruptcy, and it was set up and paid for about a month before. *Held*, that he was a "traveling salesman," and that his commission was "wages" earned within three months, entitled to priority under Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447) as amended by Act June 15, 1906, c. 3333, 34 Stat. 267 (U. S. Comp. St. Supp. 1911, p. 1507).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. § 348.*

For other definitions, see Words and Phrases, vol. 8, pp. 7082, 7083, 7369–7373, 7831.]

In the matter of the National Marble & Granite Company, bankrupt. On certificate of referee relating to claim of C. A. Brock. Allowed as preferred claim.

Batchelor & Higdon, of Atlanta, Ga., for petitioner.
Smith, Hammond & Smith, of Atlanta, Ga., and D. W. Blair, of Marietta, Ga., for trustee.

NEWMAN, District Judge. In this case C. A. Brock proved a claim for 15 per cent. commission on $1,700, the price of a monument sold by him for the bankrupt company. Brock was a traveling man for another concern, but he had an agreement and understanding with the bankrupt company that he was to have 15 per cent. on monuments

sold by him, as commission, to be paid him when the monument was set up and paid for   The monument was sold, or the agreement was made with Mr. and Mrs. J. M. Cartledge, the purchasers, in March, 1911.  The monument was delivered, put up, and paid for some time in December, 1911, and the bankruptcy proceedings were instituted in January, 1912.

There is no question but that the monument was delivered and paid for within three months before the date of the commencement of the bankruptcy proceedings, and no question is made in this case, as I understand it, but that Brock comes within the statute and was a traveling salesman, and no question is made but that commissions due salesmen for sales made by them are "wages" within the meaning of section 64 of the Bankrupt Act with reference to those entitled to priority.

"The term 'wages' should be construed in a broad and general sense as meaning compensation for services rendered." Collier on Bankruptcy (9th Ed.) p. 902.

In the Case of the New England Thread Company, 158 Fed. 788, 89 C. C. A. 285, in a decision by the Circuit Court of Appeals for the First Circuit, the headnotes explain what was decided as follows:

"Claimant was employed by the bankrupt as a salesman under a contract which assigned him certain territory and cities throughout the country in which he obligated himself to take proper care of the trade.  He was paid entirely by a commission on sales made, and established an office in Boston at his own expense.  A circular was sent out by the bankrupt announcing his employment as its special representative in the United States, and directing that all orders be sent to his office.  He exercised full discretion as to when and where he should travel and also received orders as his office. *Held*, that he was a traveling salesman within the meaning of Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), as amended Act June 15, 1906, c. 3333, :. Stat. 267 (U. S. Comp. St. Supp. 1911, p. 1507), and entitled to priority thereunder for commissions earned within three months prior to the bankruptcy not exceeding $300."

"Commissions paid to a traveling salesman for his services are 'wages,' within Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), as amended Act June 15, 1906, c. 3333, 34 Stat. 267 (U. S. Comp. St. Supp. 1911, p. 1507)."

The only point insisted upon here is that the $255 was not "earned" within the three months before the date of the commencement of the proceedings in bankruptcy.  He is entitled, under section 64b, to wages not exceeding $300 if the same were "earned" within three months before the date of the bankruptcy proceeding.

It is perfectly clear that Brock was not entitled to his compensation until the monument was erected and paid for; all the testimony shows that, although he made the contract for the sale of the monument something like ten months before the bankruptcy proceeding, he was not to receive anything at all for his services in connection with the sale of the monument until the company received the money for it.

I cannot escape the conclusion that his commission was not "earned" until the monument was paid for.  He was to receive the commission when the monument was paid for, and only when it was paid for.  He could not have required or expected the company to pay him until the monument was paid for and the money for it received.  A part of the

contract under which he was to be entitled to his commission, and as necessary to his earning the same as any other part, was that the parties purchasing the monument should accept and pay for it. Therefore I do not see how he could have earned it until it had been demonstrated that the people to whom he made the sale would go on and carry out their contract and pay his employer for the same.

In accordance with the above, the referee is directed to allow the claim of C. A. Brock as a preferred claim under section 64b of the Bankrupt Act.